# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

LORI V WHITAKER,

      Defendant-Petitioner,

vs.                                                     No. 18-cr-0161 RB
                                                        No. 19-cv-1014 RB-SCY

UNITED STATES OF AMERICA,

      Plaintiff-Respondent.

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on Defendant Lori Whitaker's Motion for Compassionate Release (CV Doc. 2, supplemented by CV Docs. 14; 22), and her Motions to Conduct a Hearing (CV Docs. 6; 8). Defendant seeks compassionate release pursuant to 18 U.S.C. § 3582 and the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194. The United States opposes the Motions, as Defendant is already on home confinement. Having carefully reviewed the record and applicable law, the Court will deny all pending Motions.

## I.       Background

In 2018, Ms. Whitaker was indicted on 75 counts of wire fraud in violation of 18 U.S.C. § 1343. (CR Doc. 2 at 4.) She embezzled $816,630.36 from the Otis Mutual Domestic Water Consumer and Sewage Works Association to pay gambling debts. (CR Doc. 22.) Ms. Whitaker pled guilty to one count of wire fraud, and in 2019 the Court sentenced her to 18 months imprisonment. (CR Doc. 32.) The sentence was a significant departure from the guideline range of 41 to 51 months. (CR Doc. 24 at 17.) Ms. Whitaker began serving her sentence in 2019 at the Satellite Prison Camp in Aliceville, Alabama. (CV Doc. 1.)

In her initial Motion to Reduce Sentence, Ms. Whitaker sought an immediate release from prison under Federal Rule of Criminal Procedure 35(a). (CV Doc. 1.) She then filed several supplements, seeking compassionate released based on her rheumatoid arthritis, nerve issues, anxiety, vaginal prolapse, and a breast lump. (CV Docs. 3; 14.) One supplemental filing alleged she tried to exhaust administrative remedies with the Bureau of Prisons (BOP) and was awaiting a response. (CV Doc. 14 at 2.) On April 30, 2020, after serving about 7.5 months of the sentence, the BOP placed her on home confinement. (CV Docs. 22; 26 at 3.)  Ms. Whitaker filed a notice on June 17, 2020, which indicates she still seeks compassionate release. (CV Doc. 22.) She alleges that releasing her from home confinement would allow her to start a job she was offered and seek medical services. (*Id.*) According to Ms. Whitaker, she can only seek emergency medical services while on home confinement. (*Id.*) She also hopes to avoid reporting to a halfway house on August 26, 2020. (*Id.*) She may have to remain at the halfway house for two weeks before her release back to home confinement. (*Id.*) With anticipated good time credit, Ms. Whitaker will complete her sentence on November 23, 2020. (*Id.*)

The United States opposes Ms. Whitaker's motions. (CV Doc. 27.) The United States argues Ms. Whitaker did not exhaust BOP remedies as to the request for release from home confinement and that compassionate release is not warranted. The United States filed its response on July 7, 2020, and Ms. Whitaker did not file a reply. The matter is therefore ready for review.

## II.    Discussion

Compassionate release is governed by 18 U.S.C. § 3582(c). Prior to the enactment of the First Step Act, only the BOP could raise the issue. The First Step Act modified 18 U.S.C. § 3582(c)(1)(A) with the intent of "increasing the use and transparency of compassionate release."

Pub. L. No. 115-391, 132 Stat. 5194, at 5239. Section 3582(c)(1)(A) now allows a federal prisoner to seek compassionate release after exhausting all administrative remedies with the BOP.

If the exhaustion requirement is met, relief is available where the proposed sentence reduction is supported by: (1) "extraordinary and compelling reasons;" (2) "applicable policy statements issued by the Sentencing Commission[;]" and (3) "the factors set forth in [18 U.S.C. §] 3553(a)." 18 U.S.C. § 3582(c)(1)(A)(i). As to the first requirement, Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for a sentence reduction, including . . . a list of specific examples." 28 U.S.C. § 994(t). The Sentencing Commission has listed four categories of extraordinary and compelling reasons: (A) Medical Condition of the Defendant, (B) Age of the Defendant, (C) Family Circumstances, and (D) Other Reasons. U.S. Sentencing Guidelines Manual (U.SS.G.) § 1B1.13, app. n.1. The Application Notes to U.S.S.G. § 1B1.13 describe two categories of extraordinary medical impairments. The first category applies to prisoners 65 or older who have served at least 10 years (or 75%) of their sentence and are experiencing "serious deterioration . . . because of the aging process." U.S.S.G. § 1B1.13, app. n.1(B). The second category applies to any prisoner "suffering from a terminal illness" or "a serious . . . medical condition that substantially diminishes the ability . . . to provide self-care within the environment of the correctional facility." *Id.*

The next requirement—that the reduction is consistent with Sentencing Commission policy—focuses on community safety. The Guidelines provide that compassionate release is appropriate only where the "defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Relevant factors include the nature of the offense, the history and characteristics of the defendant, and the nature of the danger. *Id.* (incorporating the 18 U.S.C.

§ 3142(g) factors). The last consideration for compassionate release focuses on the § 3553(a) factors. Some factors overlap with the community safety analysis; other § 3553(a) factors focus on the guideline range, the need to avoid unwarranted sentencing disparities, and the crime victims.

As an initial matter, the United States argues relief is not available because Ms. Whitaker did not exhaust administrative remedies with the BOP. (CV Doc. 27 at 5.) The Court agrees. There is nothing in the record to suggest that, after being placed on home confinement, Ms. Whitaker returned to the BOP to ask that it extinguish any remaining restrictions.

Alternatively, even if she did exhaust administrative remedies, compassionate release is not warranted in this case. As noted above, compassionate release is generally directed at a prisoner's inability "to provide self-care within the environment of the correctional facility." U.S.S.G. § 1B1.13, app. n.1(A). Ms. Whitaker is no longer in prison, and many of her concerns (*i.e.*, medication shortages, COVID-19 exposure) are moot. To the extent she still alleges she is unable to obtain non-emergency medical care on home confinement, the allegations are too vague to terminate all remaining BOP restrictions. In her latest filing addressing post-release conditions, Ms. Whitaker provides no facts about whether her breast lump was examined before or after her release from prison or whether she submitted requests to see a doctor during the home confinement. (CV Doc. 22.) On this record, the Court cannot find extraordinary and compelling reasons to justify relief. Ms. Whitaker is encouraged to work with the BOP to attend critical medical appointments through November and, if she has reason to believe she has an untreated cancerous lump, to seek emergency care.

Finally, the Court observes the requested relief undermines the need to "promote respect for the law," "afford adequate deterrence to criminal conduct," and "avoid unwarranted sentence

4

disparities." 18 U.S.C. § 3553(a)(2)(A), (B). The Tenth Circuit is particularly focused on these elements "in the context of white collar crime." *United States v. Sample*, 901 F.3d 1196, 1200 (10th Cir. 2018). In *Sample*, the Tenth Circuit reversed the district court for imposing probation after a defendant misappropriated over a million dollars. Like Ms. Whitaker, Mr. Sample had steady employment and wanted to continue working. The punishment "raise[d] concerns of sentencing disparities according to socio-economic status," particularly because the "mean length of imprisonment [for fraud offenders] is 39 months." *Id.* at 1201 (quoting U.S. Sent'g Comm'n, Sourcebook of Fed. Sent'g Statistics, Table 12, Table 14 (2016)). Here, Defendant spent 7.5 months in prison after embezzling over $800,000. The United States consulted the victim, who "feels strongly that the sentence was too lenient in light of the financial damage done to [the community]." (CV Doc. 27 at 7–8.) The Court agrees a further reduction is not warranted in this case.

Having considered Ms. Whitaker's current circumstances and the applicable law, and for all of the reasons above, the Court finds Ms. Whitaker must serve the remainder of her sentence. The Court will deny all pending motions (CV Docs. 6; 8). The Court will also enter a judgment closing the civil case and return the $5.00 habeas filing fee. Ms. Whitaker submitted the payment without prompting when she filed her first motion to reduce sentence, ostensibly because she challenged the execution of her sentence. Since then, the matter was narrowed to compassionate release and no filing fee is due.

**IT IS ORDERED** that the Motions to Reduce Sentence (**CV Doc. 2, supplemented by CV Docs. 14; 22**) are **DENIED**; and the Court will enter a judgment closing the civil case.

**IT IS FURTHER ORDERED** that the Motions for Hearing (**CV Docs. 6; 8**) are **DENIED**

**as moot.**

**IT IS FINALLY ORDERED** that the Clerk's Office shall **RETURN** Defendant's $5.00

payment, as no fee is due for compassionate release motions.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE